## MARY S. SMITH *v.* JOHN NETTLES.

On the 1st of January, 1841, A. bought a slave for the price of $1200, payable in three equal annual installments, which bore ten per cent. interest after maturity. On the 1st of January, 1845, the purchaser paid $300; the question being how the payment should be imputed, *Held:* it must be imputed as indicated by C. C., Art. 2160, first to the interest accrued on the whole debt, without reference to the installments, and not to the extinguishment of the installments, principal and interest, in the order of their maturity, without reference to any interest that might have accrued on a subsequent installment at the time of the particular payment.

C. C., Art. 2162, 2159, 2161, 1932, 1933, 2163.

APPEAL from the District Court of the parish of East Feliciana, ———,* J. Merrick, for plaintiff and appellant:

The property was productive, and of the kind which would bear interest by the operation of law.

The debt was for a single sum, which became divisible into installments only by reference to the terms of sale. No notes or other obligations were given, and all parties looked to the proces verbal of the adjudication for their protection.

Toullier would have inquired, whether the payments would extinguish any one of the credits, and imputed it so that the creditor should not receive his pay in small sums upon each credit. 7 Toul. 183.

We contend, however, that each adjudication was a single debt, due, it is true, by installments; and that all of them were equal; and that the payments should be imputed first to the interest due on the whole debt, and then to the principal.

Article 2160 of the Civil Code declares, that the debtor cannot impute to the payment of the capital, any payment he may make when there is interest or rent due. 1 N. S. 571, 3 Rob. 362.

Each adjudication was a distinct debt, which bore interest as the installments fell due as an entire thing. It was a single obligation, maturing by installments; and the debtor, who neglected to pay by installments, could not refuse to apply the payment to the interest first. In potestate ejus est, qui ex pluribus contractibus pecuniam debet, tempore solutionis ex primere in quam causam reddat. Quod si debitor id non facit, convertitur electio ad eum qui accepit. Si neuter voluntatum suam expressit; prius in usuras id quod solvitur, deinde in sortem accepto feretur. Codex. viii, p. 43, const. 1. The text, the court will observe, applies to the interest due upon a number of contracts.

It is contended by the defendant, that each obligation contains three distinct debts—thirty-three in all; and that, being of like nature, the imputation must be made to the one first falling due or the most ancient. I think it has been sufficiently shown in reply, that there is but a single obligation in each case, and that, all things being equal, the imputation of payment should be made proportionably to each obligation, and covering first the interest. C. C. 2162. 3 Ann. 352, *Adams* v. *The Bank of Louisiana.*

The English text of Article No. 2162, has modified the Article No. 156 of the old Code, which read, that the imputation should be made to the most burdensome debt. The French text in both Codes is the same. Giving weight

---

* It does not appear from the record, before what Judge this case was tried.

to the English text, under the Constitution of 1812, and there is no difficulty in making the proportioned imputation of payment.

But, there is a *dictum*, not a decision, in 6 N. S., which is based on Toullier, who refers to the Digest, l. 46, t. 3, l. 89, sec. 2, relied on by the defendant, which says, that the most ancient debt is the one which first fell due. By reference to the place cited in the Digest, it will appear that there were two different contracts, bearing different rates of interest; and that it was stipulated, that one should be paid before the other; and it was decided, that it was more in accordance with custom to extinguish the debt first due, bearing the least rate of interest. The creditor stipulating this had an interest, and a right, that the debt bearing the least rate of interest should be first extinguished. Whether the amendment of the old Code contained in No. 2162 of the new Code, is a blunder, or not, it is very like this conclusion of the ancient jurisconsult.

*Winter*, for defendant :

No imputation is made by either plaintiff or defendant at the time of payment. The law then must make it. It will impute them to the installments in the order of their maturity—to that first due—because it is clear that this was the debt which the debtor had at the time most interest in discharging. C. C. 2162; Hennen's Dig., vol. 2, p. 1162, § 3. If the French text of the latter clause of this article is to prevail, (and it is in accordance with the Code of Napoleon, and the corresponding Article of the old Code,) the payments are to be so imputed, because the installment first due is " *la plus ancienne.*" 6 N. S., 113 ; *Lanusse* v. *Lanua.* The English text of this clause seems clearly erroneous—it is in direct opposition to the first clause of the same Article—for the debt which the debtor has the most interest in discharging, cannot be, under any circumstances, the least burdensome. It is a direct contradiction in terms. The English text of the old Code reads, "the most burdensome;" which is in harmony with the rest of the Article—though we think the French text is undoubtedly the correct reading.

SLIDELL, C. J., This case presents a question as to the imputation of payments.

The facts of the case are these : At the probate sale of the estate of *Caswell Smith*, deceased, administered by plaintiff, the defendant bought slaves, amounting in the aggregate to $14,625. They were purchased in eleven lots, and at the following prices, respectively : $1200, $1536, $1530, $316, $1300, $1160, $852, $1505, $1401, $3000, $825.

The terms of sale were, "sold on a credit of one, two and three years, equal installments, from this date, (January 4, 1841,) the purchase money to be secured by approved personal security, and the purchaser to consent and agree that the proces verbal be recorded in the mortgage records of the parish of East Feliciana, and have the force of a final judgment for the amount of the respective purchases, until full and final payment. The personal property will be sold on a credit of twelve months, the purchase money to be secured by approved personal security. All the purchase money to bear ten per cent., after due, until paid."

The purchaser signed each adjudication in the probate sale, which constituted both the title and the obligation of the purchaser, the total price of each lot, without any reference to the installments, being named.

The payments were nearly all made after the maturity of the last installment, and were continued on for eleven years after the maturity of the first installment, and consisted of twenty payments. No imputation of payment was made.

The defendant contends that his debt is entirely extinguished by these payments. The only question presented is, how must these payments be imputed ? The defendant claims that they shall be applied to the extinguishment of the

installments, principal and interest, in the order of their maturity, without reference to any interest that might have accrued on a subsequent installment at the time of the particular payment. If he was correct in this view, in which he was sustained by the judgment of the lower court, his debt was entirely extinguished by the payment of $362 60, made February 15th, 1853. The plaintiff says the payments must be imputed first to the interest accrued on the whole debt, without reference to the installments. If he is correct, the defendant still owes a considerable sum, the difference resulting from the different methods of imputation.

It will simplify this discussion, to consider first the effect of a payment, supposing the debtor had bought a single slave. We will afterwards consider it with reference to the actual case of several simultaneous purchases from the same vendor.

Let us state the case then thus : on the 4th January, 1841, defendant buys at a probate sale, the negro *Solomon*, for the price of $1200, payable on a credit of one, two and three years from the date of sale, in equal installments, all to bear ten per cent. interest after maturity, if not punctually paid. He therefore owes $400 due 4th January, 1842; $400 due 4th January, 1843; $400 due 4th January, 1844; and is liable for ten per cent. interest on each after its maturity.

Let us now suppose that on the 1st January, 1845, he makes a payment of $300, and nothing is said or done at the time by himself or the creditor, except the simple payment of the money by the one and its receipt by the other. How will the law impute this payment? We think this question may be answered by the application of the principle announced in the 2161st Article of our Code. The debtor of a debt which bears interest or produces rents, cannot without the consent of the creditor impute to the reduction of the capital any payment he may make, when there is interest or rent due. Or, to use the more accurate and full language of the French text, of which the English is an imperfect and carless translation—Le débiteur d'une dette qui porte intérêts, ou d'une chose qui produit des loyers, ne peut pas, sans le consentement du créancier, imputer le payement qu'il a fait sur le capital, lorsqu'il y a des intérêts ou des loyers dues. Tout payement qui n'éteint pas à la fois le capital ou les intérêts doit s'imputer d'abord sur les intérêts. This is an adoption of the rule of the Roman Law. Si neutor voluntatem su am expressit; prius in usuras id quod soloitur, deinde in sortem accepto feretur; Code de Solutionibus, § 43. And not only does our law so make the imputation, but it forbids it to be made otherwise without the express consent of the creditor, thus refusing in the particular case the faculty which in general the law accords the debtor of declaring when he makes a payment, what debt he means to discharge, Art. 2159. The rule of imputation first to interest is certainly an equitable one. Otherwise the debtor, prompted by regard to self, would naturally prefer to impute his payment on the capital, in order to extinguish that portion of the debt bearing interest, leaving unpaid a liability not bearing it, to the manifest injury of the creditor. The rule is also peculiarly equitable in the case of a debt originating in the sale of an object capable of yielding a revenue to the purchaser; as of land susceptible of yielding fruits, or a slave, the benefit of whose labor is enjoyed by the purchaser. Such a consideration induced the lawgiver to put on a favored footing that particular class of contracts. While in ordinary cases, where there is no stipulation for interest, it is due only from

the time the debtor is put *in mora*, yet when the sum is due for property yielding a revenue, interest is due from the time the principal is payable without any demand. C. C. 1932, 1933.

Is there anything in the Article 2162, which, justly interpreted, can be considered as overriding in this supposed case the equitable rule enumerated in Article 2160. It tells us in its first clause : "When the receipt bears no imputation, the payment must be imputed to the debt which the debtor had at the time most interest in discharging, of those that are equally due, otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable." The second clause, as given in the English text, seems a palpable blunder of the translator, when brought into juxta-position with the rest of the section on the subject of "the imputation of payments." Looking to the French text which is taken *verbatim* from the Napoleon Code, we read as follows : "Si les dettes sont d'égale nature, l'imputation se fait sur la plus ancienne ; toutes choses égales, elle se fait proportionnellement."

Now it is quite clear that if the debt for the price of the slave *Solomon*, were payable in a single installment, the payment would, in the absence of the creditors consent to the contrary, be imputed first to interest, and then to principal. Is the case affected by the fact, that the debt for the price was payable in three installments ? The natural construction of Article 2163, seems to point to the case of distinct debts. Can we say, here are three distinct debts, and we must therefore impute the whole payment to the interest and principal of the first installment, because that is the oldest in its maturity ? It seems to us this would be an unreasonable mode of considering the contract. The purchase of the slave was a single contract, the price a single price. The division into installments, did not destroy its unity and entirety to such an extent as to make those distinct debts within the reasonable purview of Article 2162, after they had all matured. Otherwise we should have the anomaly of a debtor paying, without the consent of the creditor, the capital of a part of the price of the thing sold, which capital was bearing interest, yet avoiding the payment of interest of another part of the price, which interest was bearing no interest, and this, while he was enjoying the revenue of the thing sold. A conclusion so inequitable is repelled by the general intendment of the section, which must be construed with a just reference to all its provisions.

In saying the price was an entire price, we speak with reference to the subject-matter, the doctrine of imputation, which has its own rules founded on practical considerations of equity and common sense. Questions of prescription and others referred to in argument would involve other elements and principles proper to themselves, a reference to which might perhaps embarrass rather than aid us in the present discussion.

The above principle of imputation, if true in the supposed case, is equally true in its application to the debts for the eleven purchases. They were all contracted on the same day, all had the same dates of maturity, all bore mortgage, all the same rate of interest, were all due to the same creditor, and the payments from time to time, were made generally, without any application by either party to the price of any particular purchase. Debtor and creditor may be considered under these circumstances as treating the whole indebtedness as one for all the purposes of imputation, after all the installments become due.

Of course, the small payments made in 1842, before the second and third instalments matured, must be imputed first to the interest accrued, after matu-

rity, until date of payment, on the first installments, and then to the capital of first installments; for the rule is clear that imputation must be made to the debt due.    Art. 2162.

The payments made after all the installments fell due, are to be imputed first to the payment of all accrued interest on the entire indebtedness, and the surplus if any to the entire unpaid capital.

It is therefore decreed, that the judgment of the District Court be reversed, and that this cause be remanded for the purpose of stating an interest account according to the principles announced in the opinion of this court, and rendering judgment for the balance to be so ascertained, and interest with mortgage and privilege upon the respective slaves, for the respective unpaid portions of their price, and for due proceedings to law, the defendant to pay the costs of the appeal.

BUCHANAN, J.    The distinguishing feature of this case is, that all the installments of the price of the slaves have always remained in the same hand, both before and since maturity.    Under these circumstances, the three debts created by the contract, that is to say, the obligations to pay three distinct sums at three different terms, each bearing interest from maturity, were reunited into one debt, at the maturity of the last obligation, and the imputation of payments made after that date, may be with propriety made as in the case of a single debt.

I therefore concur in the decision just pronounced.